Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| ABIMAEL CARRILLO LÓPEZ  Parte Recurrida  v.  AUTORIDAD DE LOS PUERTOS; ESTADO LIBRE ASOCIADO DE PUERTO RICO; FULANO DE TAL Y FULANA DE TAL  Parte Peticionaria | TA2026CE00195 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Fajardo  Civil núm.: FA2025CV00501  Sobre: Usucapión |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli.

Trigo Ferraiuoli, jueza ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de marzo de 2026.

Comparece la parte peticionaria, Autoridad de los Puertos de Puerto Rico (Autoridad o peticionaria), mediante recurso de *certiorari* incoado el 17 de febrero de 2026, y solicita que revoquemos la determinación emitida el 12 de noviembre de 2025, notificada el 11 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala de Fajardo (TPI)[1]. Mediante el referido dictamen, el TPI declaró No Ha Lugar la solicitud de desestimación presentada por la Autoridad.

El 25 de febrero de 2026, la parte recurrida, Abimael Carrillo López (Carrillo López), presentó su *Escrito en Oposición a la Expedición del Recurso de Certiorari*[2].

Por los fundamentos que exponemos a continuación, se expide el auto de *certiorari* y se revoca la resolución recurrida. En consecuencia, se desestima la demanda.

**I.     Trasfondo fáctico y procesal**

---

[1] Véase, *Minuta,* Entrada 32 SUMAC-TPI.
[2] Entrada Núm. 5.

El 16 de mayo de 2025, Carrillo López presentó una demanda sobre usucapión en contra de la Autoridad de los Puertos y el Estado Libre Asociado de Puerto Rico.[3] El 21 de mayo de 2025, presentó *Demanda Enmendada.*[4] En esta, le solicitó al foro de instancia que le concediera la titularidad de un predio de terreno, el cual describió como sigue:

> Parcela radicada en el área de Flamenco del término municipal de Culebra con una cabida de Dos Punto cuatro mil cuatrocientos cuarenta y seis (2.4446) cuerdas, equivalentes a NUEVE MIL SEISCIENTOS OCHO PUNTO MIL CIENTO TRECE (9608.1213) METROS CUADRADOS. En lindes por el Norte, con terrenos de la Autoridad de los Puertos y terrenos del Municipio de Culebra; por el Sur, con Carretera Estatal 251; por el Este, con terrenos de la Autoridad de los Puertos y terrenos del Municipio de Culebra; y por el Oeste, con Bryce Thompson.-----------------
>
> ---**Descrito conforme plano de mesura** preparado por el Agrimensor Julio C. Cajigas Morales, Lic. 9795, el 6 de mayo de 2025. Anejo I-------------------------------------------------------
>
> (Énfasis nuestro).

El recurrido alegó que comenzó a ocupar y poseer el predio "en el año 1990" de forma continua, pública y pacífica, a título de dueño, por un periodo mayor de treinta (30) años y solicitó que ordenara al Registro de la Propiedad la inscripción del inmueble a su nombre.

En cumplimiento con la *Orden* emitida por el TPI el 2 de junio de 2025[5], el 7 de septiembre de 2025, Carrillo López presentó la certificación registral[6] de la finca en controversia, la cual lee como sigue:

> **Finca número: 720**
> **Demarcación: Culebra**
> **Descripción de la Finca**
>
> Número de Catastro: ---. Rústica: BARRIO FLAMENCO de Culebra. Solar: A-1. Cabida: 82.0873 Cuerdas. Linderos: Norte, by Lot Number 52 of the Culebra Sub-Division. Sur,

---

[3] Entrada 1 SUMAC-TPI.
[4] Entrada 6 SUMAC-TPI. La demanda enmendada eliminó los incisos 4, 7, 8 y 9 en los hechos, así como la causa de acción de expediente de dominio consignada en el epígrafe de la demanda original. El 2 de junio de 2025, el TPI emitió orden, en la que tomó conocimiento de la demanda enmendada presentada y le requirió a Carrillo López presentar una certificación registral. Véase, Entrada 11 SUMAC-TPI.
[5] Entrada 11 SUMAC-TPI.
[6] Entrada 22 SUMAC-TPI.

by lands of the Unites States of America (portions of U.S.A. Lot Number 86. Este, by lands of the Unites States of America (portions of former U.S Navy Auxiliary Landing Falicity, Culebra). Oeste, by lands of the Unites States of America (portions of former U.S Navy Auxiliary Landing Falicity, Culebra). <u>Esta parcela se identifica como Parcela A-1 (Airport Operation Area).</u>

Titulares

<u>Inscrito a favor de Autoridad de los Puertos de Puerto Rico.</u> En virtud de documento del 7 de febrero de 1980, ante la notario Barbara Germinia. Inscrita al tomo 15 del folio 185 de Culebra, según inscripción 1ª.

Cargas y Gravámenes

<u>Condiciones Restrictivas: a favor de Estados Unidos de América, según inscripción 1ª.</u>

Servidumbre (Sin cuantía): por su procedencia, a favor de Estados Unidos de América, y a servidumbre de paso.

(Subrayado nuestro).

Así las cosas, el 23 de septiembre de 2025, la Autoridad de los Puertos presentó una *Moción de Desestimación*[7]. En primer lugar, la Autoridad argumentó que Carrillo López no expuso una reclamación que justifique la concesión de un remedio. Al respecto, expuso que, en la demanda, el recurrido se limitó a alegar la ocupación continua, pacífica, ininterrumpida en concepto de dueño por más de treinta años sobre el predio en cuestión, mas no adujo hechos demostrativos que satisfagan el estándar de plausibilidad. En ese sentido, la Autoridad esgrimió que Carrillo López no precisó la fecha exacta en que comenzó a ocupar el predio, no particularizó actos posesorios concretos y tampoco hizo referencia a los actos de oposición ejercitados por la Autoridad. También expuso que el predio que Carrillo López reclama no consta inscrito en el Registro de la Propiedad, pues, conforme surge de la certificación registral

---

[7] Entrada 26 SUMAC-TPI. Junto a su escrito, la Autoridad acompañó los siguientes documentos: Junto a su escrito acompañó los siguientes documentos: Plano de Mensura del 6 de mayo de 2025; Copia Certificada de Demanda de Desahucio 1997; Copia de Planos Descriptivos 1997; Copia Certificada de Contestación Enmendada a Demanda, Defensas y Alegaciones, Reconvención y Demanda Contra Terceros; Copia Certificada de Relación del Caso, Determinaciones de Hechos, Conclusiones de Derecho y Sentencia; Copia Certificada de Sentencia KLAN200000325; Copia Certificada de Sentencia CC-2000-0594; Copia Certificada de Orden de Ejecución de Sentencia; copia Certificada de Moción de Sentencia Sumaria de la Autoridad y Quitclaim Deed de 7 de febrero de 1980.

presentada por el propio recurrido, dicho predio forma parte de la Finca 720 inscrita a favor de la Autoridad. Por lo anterior, señaló que aun aceptando como ciertas las alegaciones bien hechas de la demanda, procede su desestimación, pues Carrillo López no proveyó hechos demostrativos y suficientes que logren demostrar su derecho al remedio solicitado.

En segundo lugar, la peticionaria solicitó al TPI que tomara conocimiento judicial de la sentencia final y firme emitida el 31 de enero de 2000, por el foro de instancia en el caso *Autoridad de los Puertos v. Carmelo Carrillo y otros,* civil número NPE 97-0002, sobre desahucio. Especificó que en virtud de dicho pronunciamiento se determinó que la naturaleza de la ocupación del predio por parte de los demandados era en concepto de precaristas. Añadió que en dicho dictamen también se adjudicó la titularidad de la propiedad, su ubicación en la zona aeroportuaria y que esta era un bien de dominio público, por lo que es inalienable, imprescriptible y no puede ser usucapido. Además, la Autoridad expuso que dicha sentencia fue confirmada por esta Curia el 11 de mayo de 2000 (KLAN200000325) y por el Tribunal Supremo el 30 de octubre de 2006 (CC-2000-0594). Como consecuencia de lo anterior, la Autoridad arguyó que aplicaba la doctrina de cosa juzgada en su modalidad de impedimento colateral por sentencia. Por último, recalcó que la propiedad donde enclava el predio reclamado por Carrillo López constituye un bien de uso público que no puede ser usucapido.

El 10 de octubre de 2025, Carrillo López presentó *Oposición a Moción de Desestimación*[8]. En resumen, el recurrido planteó que, aun cuando él forma parte del núcleo familiar[9] de los demandados

---

[8] Entrada 28 SUMAC-TPI. Junto a esta, acompañó una con fecha del 11 de marzo de 2025 de la Autoridad de los Puertos sobre *Ocupación No Autorizada en el Aeropuerto Benjamín Rivera Noriega.*
[9] El recurrido Carillo López es hijo de Carmelo Carrillo Maldonado y Elsa López Gómez quienes figuraron como demandados en el caso NPE 97-0002.

en el caso NPE 97-0002, no procedía aplicar la doctrina de cosa juzgada ni impedimento colateral por sentencia. Basó su argumento en que no se cumple con el requisito de identidad de partes, ya que él no figuró como parte demandada en dicho caso y tampoco fue emplazado.

Asimismo, el recurrido argumentó que la sentencia emitida por el Tribunal Supremo en relación con la sentencia del caso NPE 97-0002 no hizo determinación alguna sobre el carácter público del predio en cuestión y que este se encuentra fuera de las instalaciones del aeropuerto. Carrillo López reiteró que ha ocupado el predio de forma pública, pacífica e ininterrumpida desde 1990. Por tanto, arguyó que para esa fecha ya se había consumado el término prescriptivo de usucapión. El TPI señaló una vista para discutir la solicitud de desestimación[10].

El 12 de noviembre de 2025, se celebró la vista señalada[11]. Iniciados los procedimientos, las partes presentaron sus respectivas posturas en cuanto a la solicitud de desestimación presentada por la Autoridad. Escuchados los argumentos de las partes, el TPI, sin más, declaró No Ha Lugar la solicitud de desestimación de la Autoridad y le concedió término para contestar la demanda[12]. La minuta que recoge el dictamen aquí impugnado, transcrita el 8 de diciembre de 2025, está firmada por el juez y se notificó a las partes el 11 de diciembre de 2025[13].

Inconforme, la Autoridad solicitó reconsideración el 29 de diciembre de 2025[14]. El 14 de enero de 2026, Carrillo López se opuso

---

[10] Entrada 29 SUMAC-TPI.
[11] El recurrido Carrillo López compareció representado por el Lcdo. Alfredo III López Garay en unión al Lcdo. Rafael A. Soto Vega; la Lcda. Annie Rivera Cruz fue excusada. Por su parte, la Autoridad de los Puertos compareció representada por la Lcda. Bryanda Liz Díaz Romero en unión al Lcdo. Víctor J. Quiñones Martínez. Además, compareció el Sr. Sigfredo Rivera Meléndez, Gerente del Aeropuerto Ceiba-Culebra.
[12] El 12 de diciembre de 2025, la Autoridad contestó la demanda. Entrada 33 SUMAC-TPI.
[13] Entrada 32 SUMAC-TPI.
[14] Entrada 35 SUMAC-TPI.

a la solicitud de reconsideración[15]. Evaluados ambos escritos, el foro recurrido denegó la solicitud de reconsideración de la Autoridad mediante orden emitida el 15 de enero de 2026[16].

Aun insatisfecho, la Autoridad comparece ante nos, vía recurso de *certiorari* y formuló los siguientes señalamientos de error:

> PRIMERO: Erró el Tribunal de Primera Instancia al no desestimar la Demanda, a pesar de que el predio objeto de la controversia es un bien de dominio y uso público, no susceptible de usucapión.

> SEGUNDO: Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la moción de desestimación, sin considerar que la reclamación presentada por la Parte Recurrida no cumple con los elementos necesarios para la configuración de la usucapión, toda vez que existe un impedimento colateral derivado de una sentencia previa que afecta la propiedad en cuestión y que imposibilita legalmente la adquisición por prescripción adquisitiva.

El 19 de febrero de 2026, la Autoridad presentó *Moción Urgente en Auxilio de Jurisdicción y Solicitud de Paralización,* en la que solicitó se paralizaran los procedimientos ante el foro primario[17]. Ese mismo día, emitimos una *Resolución* en la que ordenamos la paralización de los procedimientos y le concedimos un término a la parte recurrida para presentar su postura en cuanto al recurso.

El 25 de febrero de 2026, la parte recurrida, Abimael Carrillo López (Carrillo López), presentó su *Escrito en Oposición a la Expedición del Recurso de Certiorari*[18].

Con el beneficio de la comparecencia de ambas partes, estamos en posición de resolver.

## II.     Exposición del Derecho

### A. El *Certiorari*

---

[15] Entrada 39 SUMAC-TPI.
[16] Entrada 40 SUMAC-TPI.
[17] El 2 de febrero de 2026, el TPI emitió una orden en la que señaló la vista de conferencia inicial para el 4 de marzo de 2026.
[18] Entrada Núm. 5.

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de superior jerarquía puede revisar, a su discreción, una decisión interlocutoria de un tribunal inferior[19].

Ante un recurso de *certiorari* civil, tenemos que evaluar nuestra autoridad para expedir el mismo al amparo de la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V[20]. Ésta dispone que, el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente se expedirá por el Tribunal de Apelaciones cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57, o de la denegatoria de una moción de carácter dispositivo.

No obstante, y por excepción a lo dispuesto anteriormente, el foro apelativo podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Según dispuesto en la Regla 52.1, *supra,* al denegar la expedición de un recurso de *certiorari,* el Tribunal de Apelaciones no tiene que fundamentar su decisión. *Íd.*

Superado dicho análisis, y aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, *supra,* para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la

---

[19] *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).
[20] *Caribbean Orthopedics v. Medshape et al.,* supra.; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019).

luz de los criterios enumerados en la Regla 40 de nuestro Reglamento[21], se justifica nuestra intervención. Estos criterios son:

    A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

    B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

    C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

    D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

    E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

En fin, la Regla 52.1 de Procedimiento Civil, *supra*, enumera en forma taxativa aquellas instancias en las cuales el Tribunal de Apelaciones no acogerá una petición de *certiorari*, mientras que la Regla 40 del Reglamento del Tribunal de Apelaciones guía la discreción de este foro en aquellos asuntos en los que sí se permite entender, pero en los que los jueces ejercerán su discreción[22].

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro[23]. Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado para que continúen sin mayor dilación los procedimientos del caso ante el foro primario.

---

[21] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 63, 215 DPR __ (2025).

[22] *Torres González v. Zaragosa Meléndez,* 211 DPR 821, 849 (2023).

[23] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008).

**B**. **Desestimación**

La Regla 10.2 de Procedimiento Civil, supra, permite que una parte demandada en un pleito solicite la desestimación de la demanda presentada en su contra.[24] Esta, dispone que una parte demandada presentará una moción fundamentada en: (1) la falta de jurisdicción sobre la materia; (2) la falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio** y; (6) dejar de acumular una parte indispensable.[25]

Para que proceda una moción al amparo de la Regla 10.2, supra, el Foro Primario deberá tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorables a la parte demandante.[26] Es decir, al momento de evaluar una moción de desestimación, los tribunales deberán examinar los hechos alegados en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante.[27]

Bajo esta premisa, para que una moción de desestimación prospere, se tendrá que demostrar de forma certera que el demandante no tiene derecho a remedio alguno, que pudiere probar en apoyo a su reclamación.[28] Esta Regla 10.2 (5), es de las de mayor

---

[24] *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025); *Díaz Vázquez et al. v. Colón Peña et al.*, 214 DPR 1135 (2024); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 234 (2016).

[25] *Rodríguez Vázquez et als. v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 215 DPR ___ (2025); *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, 214 DPR 1109 (2024); *Rivera, Lozada v. Universal*, 214 DPR 1007 (2024); *Blassino, Reyes v. Reyes Blassino*, 214 DPR 823 (2024); *Costa Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024).

[26] *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, supra; *Rivera, Lozada v. Universal*, supra; *Blassino, Reyes v. Reyes Blassino*, supra; *Costas Elena y otros v. Magic Sport y otros*, supra, pág. 533; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisition v. Mun. Yabucoa et. al.,* 210 DPR 384, 396 (2022); *Bonnelly Sagrado et al. v. United Surety*, 207 DPR 715, 722 (2021).

[27] *Morales et al. v. Asoc. Propietarios*, 2024 TSPR 61, 214 DPR 284 (2024); *Inmob. Baleares, et al. v. Benabe et al.*, supra; *Cruz Pérez v. Roldán Rodríguez et. al.*, 206 DPR 261, 267 (2021); *López García v. López García*, 200 DPR 50, 69 (2018).

[28] *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, supra*; Cobra Acquisition v. Mun. Yabucoa et. al.,* supra, pág. 398*; López García v. López García*, supra, pág. 70.

complejidad en términos jurídicos, pues, una moción al amparo de esta se fundamenta en que los hechos que alega la parte demandante, aun presumiéndose ciertos, no son suficientes como base para que se les conceda un remedio. Es decir, en efecto, procederá la desestimación si aun dando por cierto todos los hechos bien alegados del demandante, no se demuestra derecho a una reclamación.[29]

### C. Suficiencia fáctica en las alegaciones

La anterior Regla 6.1 de las derogadas Reglas de Procedimiento Civil de 1979[30], solo era necesario exponer en la demanda una "relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tenía derecho a un remedio". Este enfoque, de amplia liberalidad en la redacción de las alegaciones, cambió en el mes de julio del año 2010, con la entrada en vigor de las actuales Reglas de Procedimiento Civil aprobadas en el 2009.

La Regla 6.1 *vigente* de Procedimiento Civil, supra, establece que las alegaciones de una demanda contendrán una "relación sucinta y sencilla de los **hechos demostrativos** de que la parte peticionaria tiene derecho a un remedio". (Énfasis suplido). Recientemente, nuestro Alto Foro expresó que nuestro ordenamiento jurídico "se exige que el escrito comprenda una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio".[31]

Sobre este particular, expresa el profesor Rafael Hernández Colón lo siguiente:

> La R[egla] 6.1 [...] impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. [...] No obstante,

---

[29] *Rivera, Lozada v. Universal,* supra; *Blassino, Reyes v. Reyes Blassino,* supra; *Trinidad Hernández et al. v. E.L.A. et al.,* 188 DPR 828, 848 (2013).
[30] 32 LPRA Ap. III.
[31] *León Torres v. Rivera Lebrón,* 204 DPR 20, 40 (2020).

> si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, ***la alegación debe aún contener la suficiencia fáctica*** que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.

> R. Hernández Colón, *Derecho procesal civil,* 6ta ed., San Juan, Lexis Nexis, 2017, pág. 287.

(Énfasis suplido)

En la misma obra, el tratadista en cuestión añadió lo siguiente, respecto a la Regla 6.1 de Procedimiento Civil de 2009, supra:

> El demandante debe alegar hechos suficientes que eleven su reclamación ***más allá del nivel especulativo*** y la empujen a través de la línea de lo "concebible" o lo "plausible". [...] ***El estándar de plausibilidad requiere que las alegaciones contengan una relación fáctica suficiente que, aceptada como cierta, establezca que la reclamación del remedio es plausible de su faz.***[32]

Además, con relación a esta Regla el Comité Asesor Permanente de Reglas de Procedimiento Civil explicó en su informe que: "... la propuesta requiere que en las alegaciones se aporte una relación de hechos con el propósito de que las partes y el tribunal puedan apreciar con mayor certeza los eventos medulares de la controversia".[33]

Si bien es cierto que el Tribunal viene obligado a aceptar como ciertas todas las alegaciones bien hechas, es importante que distinga las meras alegaciones concluyentes que no pueden presumirse ciertas.[34] Luego de brindarle veracidad a los hechos bien alegados, debe determinar si a base de éstos la demanda establece una reclamación plausible que justifique que el demandante tiene derecho a un remedio, guiado en su análisis por la experiencia y el sentido común. De determinar que no cumple con el estándar de

---

[32] R. Hernández Colón, op. cit., pág. 287. (Citas y notas al calce omitidas). (Énfasis nuestro).

[33] Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, *Informe de Reglas de Procedimiento Civil*, Vol. I, diciembre 2007, a la pág. 70.

[34] Hernández Colón, op. cit., a la pág. 307.

plausibilidad, el tribunal debe desestimar la demanda y no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias.[35]

**D. Disposiciones transitorias del "Código Civil de Puerto Rico" de 2020**

El Artículo 1808 del Código Civil de Puerto Rico de 2020[36] establece que las acciones y derechos nacidos y no ejercitados antes de la entrada en vigor del Código Civil de 2020 subsisten con la extensión y en los términos reconocidos en la legislación precedente. No obstante, **su ejercicio y procedimiento para hacerlos valer estará sujeto a lo dispuesto en este código.**

Además, el Artículo 1814 atiende lo relativo a términos prescriptivos, de caducidad y usucapión, en los siguientes términos:

> Los términos prescriptivos, de caducidad o de usucapión que estén transcurriendo en el momento en que este Código entre en vigor, tienen la duración dispuesta en la legislación anterior; pero si el término queda interrumpido después de la entrada en vigor de este Código, su duración será la determinada en este.[37]

**A. La Usucapión**

La usucapión es una forma de adquirir el dominio y otros derechos reales mediante la posesión y de acuerdo con las maneras y condiciones determinadas por ley.[38] La posesión tiene que ser en concepto de dueño, no interrumpida, pública y pacífica.[39] Su equivalente es el artículo 778 del Código Civil 2020.[40] El Código Civil de 1930 no definía quien era la persona que tenía la posesión en concepto de dueño. El Código actual la define como aquella que

---

[35] *Íd.*

[36] 31 LPRA sección 11713. (Énfasis nuestro).

[37] 31 LPRA sec. 11719.

[38] Artículo 1830 del Código Civil de 1930, 31 LPRA sección 5241, hoy Artículo 777 del Código Civil, 31 LPRA sección 8021.

[39] Artículo 1841 del Código Civil de 1930, 31 LPRA sección 5262.

[40] 31 LPRA sección 8022.

actúa como verdadera titular por los actos que realiza en relación con la propiedad.[41]

La usucapión ordinaria requiere la posesión de buena fe y justo título por el tiempo que determina la ley. La extraordinaria requiere poseer por el tiempo determinado por ley, sin necesidad de buena fe ni justo título. El dominio y demás derechos reales sobre los bienes inmuebles también prescriben por su posesión no interrumpida durante treinta años, sin justo título, ni buena fe y sin distinción entre presentes y ausentes.[42] Ahora bien, según el Código Civil 2020, a la usucapión con justo título y buena fe para la adquisición de bienes inmuebles, le aplica un término de diez años. No obstante, la usucapión ocurre a los veinte años, cuando no existe título ni buena fe.[43]

El Código Civil del 1930 establecía que el poseedor actual podía completar el término necesario para la prescripción uniendo el suyo al de su causante.[44] Esta norma permaneció vigente en el artículo 789 del Código Civil de 2020[45]. Ahora bien, el Artículo 790 del Código Civil 2020[46] dispone que la usucapión ordinaria del dominio o derechos reales en perjuicio de tercero contra un título inscrito en el Registro de la Propiedad no tiene lugar sino en virtud de otro título igualmente inscrito, y el tiempo comienza a transcurrir desde la inscripción del segundo.[47] El Código Civil 2020 añadió el artículo 795 del Código Civil[48], que dispone que el adquiriente puede

---

[41] Artículo 779 del Código Civil, 31 LPRA sección 8023.
[42] Artículos 1840 y 1859 del Código Civil de 1930, 31 LPRA secciones 5261 y 5280.
[43] Artículo 788 del Código Civil del 2020, 31 LPRA 8032.
[44] Artículo 1860 del Código Civil de 1930, 31 LPRA 5281.
[45] 31 LPRA § 8033.
[46] Por su parte, el Artículo 1849 del derogado Código Civil de 1930, expresaba lo siguiente:

> Artículo 1849. — Título inscrito. (31 L.P.R.A. § 5270) Contra un título inscrito en el registro de la propiedad no tendrá lugar la prescripción ordinaria del dominio o derechos reales en perjuicio de tercero, sino en virtud de otro título igualmente inscrito, debiendo empezar a correr el tiempo desde la inscripción del segundo.

[47] 31 LPRA § 8034.
[48] 31 LPRA § 8039.

entablar la acción para que se le declare titular del derecho usucapido, una vez transcurre el término establecido. La sentencia favorable es título para la inscripción del derecho en el Registro de la Propiedad y para cancelar el asiento a favor del antiguo titular.

**B. Los Bienes y su clasificación**

Nuestro Código Civil define el concepto "bienes" como las cosas o derechos que pueden ser apropiadas y susceptibles de valoración económica.[49] Así pues, estos se clasifican entre bienes públicos y privados; corporales e incorporales; consumibles y no consumibles; fungibles y no fungibles; divisibles e indivisibles; en el tráfico jurídico y fuera del tráfico jurídico; y muebles e inmuebles.[50] De igual forma, el aludido código divide los bienes por relación de pertenencia. Por ello, en nuestra jurisdicción los bienes pueden ser comunes, públicos o privados.[51]

Los bienes comunes son aquellos cuya propiedad no pertenece a nadie en particular y en las cuales todas las personas tienen libre uso, en conformidad con su propia naturaleza: tales son el aire, las aguas pluviales, el mar y sus riberas.[52] Los bienes privados, son: (a) los pertenecientes al Pueblo de Estados Unidos de América, al Pueblo de Puerto Rico y a cada una de sus subdivisiones políticas; y que no están afectados al uso o servicio público; y (b) los pertenecientes a las personas.[53] A su vez, estos pueden clasificarse como bienes de dominio público o bienes de dominio privado.[54] En lo aquí pertinente, el Artículo 238 define los bienes públicos de uso público como aquellos bienes privados, pertenecientes al Estado o a sus subdivisiones o a particulares, que han sido afectados para destinarlos a un uso o servicio público.

---

[49] Art. 236 Código Civil de Puerto Rico de 2020, 31 LPRA § 6011.
[50] 31 LPRA § 6012.
[51] Arts. 238 al 244, 31 LPRA § 6021-6027; *San Gerónimo Caribe Project v. ELA I,* 174 DPR 518, 557 (2008).
[52] Art. 241 del Código Civil, 31 LPRA § 6024.
[53] 31 LPRA § 6025.
[54] *Watchtower et al. v. Mun. Dorado I,* 192 DPR 73, 84-85 (2014).

Estos bienes públicos se denominan bienes de uso y dominio público.[55] En cuanto a los bienes de dominio público, contrario a los bienes particulares, los mismos gozan de una tutela diferente al ser inembargables, imprescriptibles e inalienables.[56] Es decir, estos bienes están fuera del comercio ya que por disposición de ley no pueden enajenarse, ni poseerse privadamente.[57] Por consiguiente, el Código Civil dispone que, en cuanto a la enajenación y administración de los bienes, las personas tienen la libre disposición de los bienes que han adquirido legítimamente, sin más restricciones que las establecidas por este Código.[58] Respecto a la administración y enajenación de bienes privados pertenecientes al Pueblo de Puerto Rico, el aludido artículo dispone que esta se regirá por las leyes y reglamentos especiales y que solamente pueden ser objeto de enajenación en la manera y con las restricciones prescritas en las leyes y reglamentos aplicables.[59]

A tenor, el Artículo 244 establece que los bienes privados de las personas pierden esta cualidad por dedicarse a fines públicos incompatibles con la propiedad privada y readquieren su primitiva condición tan pronto cesan dichos fines. El cambio o la alteración de la clasificación jurídica de los bienes puede realizarse por cesar el fin público al cual fueron destinados, **lo cual puede ocurrir en la forma prescrita por ley o reglamento.**[60]

Como corolario de lo anterior, un bien puede transformarse en uno de dominio público, y viceversa, mediante actos de afectación *y* desafectación.[61] La afectación necesariamente implica que determinado bien ha sido destinado a un fin de interés público

---

[55] 31 LPRA § 6021.
[56] *Watchtower et al. v. Mun. Dorado I*, supra, citando a *Figueroa v. Municipio de San Juan*, 98 DPR 534, 562-563 (1970).
[57] *Íd.*
[58] 31 LPRA § 6026.
[59] *Íd.*
[60] 31 LPRA § 6027. (Énfasis nuestro).
[61] *Watchtower Bible et al. v. Mun. Dorado I*, 192 DPR, a la pág. 88*; San Gerónimo Caribe Project v. ELA I*, 174 DPR, a la pág. 558.

particular y puede deducirse de una declaración legislativa o mediante actos administrativos del Estado al amparo de una ley.[62] "Así, podríamos decir que luego de que el legislador advierte una necesidad social, fija los objetivos que constituyen la razón para someter al demanio[63] cierta categoría de bienes."[64]

Por otra parte, un bien cuyo uso es común, por su naturaleza, puede adquirir la clasificación de dominio público, sin que se requiera un acto formal de afectación.[65] De otra parte, la doctrina también reconoce la posibilidad de que tenga lugar la afectación de un bien, ello mediante un acto singular del soberano para construir o establecer un inmueble para fines públicos.[66] Por tanto, de lo anterior se puede colegir que, en efecto:

> "[el] carácter de dominio público de un bien, no depende de su naturaleza física o geológica. Lo determinante es su finalidad: el uso público del mismo. *De ahí que un bien, originalmente de dominio público, pueda transformarse en bien patrimonial, susceptible de enajenación, si su uso cesa de ser público.*" (Énfasis suplido.) [...].[67]

Por tanto, un bien afecto a un fin de interés público, puede advenir a ser de carácter privado y, por consiguiente, susceptible de apropiación individual, mediante un acto de desafectación.[68] Esta figura se perfila como la antítesis de la afectación, toda vez que produce el efecto de la pérdida de la clasificación de dominio público del bien objeto de tal acto. Así, para que este adquiera condición de propiedad particular, se exige que haya cesado el fin que se le hubiere dado.[69] Ahora bien, "la desafectación procede del mismo

---

[62] *Watchtower et al. v. Mun. Dorado I*, 192 DPR, a la pág. 89.

[63] Demanio o dominio público. *Véase*, Real Academia Española, *Diccionario de la Lengua Española*, Vigésima Segunda Edición (2001), a la pág. 744.

[64] *Íd.*, a la pág. 90.

[65] *San Gerónimo Caribe Project v. ELA I*, 174 DPR, a la pág 523; Art. 238-239 del Código Civil, 31 LPRA § 6021-6022.

[66] *Watchtower Bible et al. v. Mun. Dorado I*, 192 DPR, a la pág. 90*; San Gerónimo Caribe Project v. ELA I*, 174 DPR, a la pág. 523.

[67] *Íd.*, a la pág. 565, citando de M. Godreau y J.A. Giusti, *Las concesiones de la Corona y propiedad de la tierra en Puerto Rico, siglos XVI-XX: Un estudio jurídico*, 62 Rev. Jur. U.P.R. 351, 563 (1993).

[68] *San Gerónimo Caribe Project v. ELA I*, 174 DPR, a las págs. 556-557.

[69] *Íd.*, a las págs. 565-566.

modo en que tuvo lugar la afectación."[70] De este modo, el hecho de que haya cesado el uso público, por sí solo, no resulta suficiente a tal fin.

La mutación dominical correspondiente en virtud de la desafectación exige que medie: (1) un acto soberano, ya sea mediante la aprobación de una ley a tales efectos o mediante un acto administrativo al amparo de los poderes delegados para ello; o, (2) por cambios en la condición natural de los bienes que los excluyan de la clasificación contemplada por la propia ley.[71] "De hecho, nuestro ordenamiento puede requerir una combinación de las modalidades de desafectación para que esta proceda conforme a derecho."[72]

### III.    Aplicación del Derecho a los Hechos

La Regla 52.1 de Procedimiento Civil, supra, nos faculta a expedir el auto de *certiorari* cuando se recurre de la denegatoria de una moción de carácter dispositivo, como lo es una moción de desestimación. En virtud de ello, ejercemos nuestra discreción y expedimos el auto solicitado.

Adelantamos que solo discutiremos el primer señalamiento de error, con el que disponemos de la controversia de autos, sin necesidad de dirimir el segundo señalamiento de error.

En su recurso, la Autoridad de los Puertos plantea que el TPI erró al denegar su solicitud de desestimación, pues afirma que aun si se asumieran como ciertos los hechos bien alegados por Carrillo López, este no expone una reclamación que justifique la concesión de un remedio. Lo anterior, entre otros, debido a que el bien objeto de controversia no puede ser objeto de usucapión por ser un bien de dominio público. Le asiste la razón.

---

[70] *Íd.,* a la pág. 566.
[71] *Íd.,* a la pág. 567.
[72] *Íd.,* a las págs. 567-568.

Al evaluar las alegaciones contenidas en la demanda instada por Carrillo López, concluimos que estas no superan los criterios requeridos en las Reglas 6.1 y 10.2(5) de Procedimiento Civil, *supra,* discutidos anteriormente. En su escueta demanda, el recurrido se limitó a esbozar los elementos de la causa de acción de usucapión como alegaciones fácticas sin incluir hechos **demostrativos y suficientes** que, que aun tomándolos como ciertos, justifiquen la concesión del remedio que solicita[73]. Carrillo López no mencionó la fecha exacta en la que comenzó a ocupar el terreno, y tampoco detalló actos posesorios concretos. De hecho, el recurrido no mencionó que el predio que pretende usucapir es parte de la Finca 720, cuyo titular registral es la Autoridad de los Puertos. En la aludida demanda enmendada, Carrillo López tampoco mencionó los actos de oposición[74] que la Autoridad ejercitó como titular registral. Habida cuenta de lo anterior, dichas alegaciones, las cuales determinamos no están bien hechas, aun si las tomáramos como ciertas, no son suficientes ni dan base que justifique la concesión del remedio que el recurrido solicita.

Como hemos mencionado, al considerar una moción de desestimación, basada en que la demanda deja de exponer hechos que justifiquen la concesión de un remedio, nuestro ordenamiento jurídico favorece el que los tribunales evalúen los hechos liberalmente y desde perspectiva más favorable para la parte demandante. No obstante, ello no implica que el tribunal en todos

---

[73] Cabe destacar que, en la escueta *Demanda Enmendada*, acápite 7, se alegó **únicamente**: "Que la parte demandante *comenzó a ocupar y poseer el referido predio en el año 1990 de manera continua, pública, pacífica, ininterrumpida, a título de dueño, por un periodo mayor de treinta (30) años*". De igual forma, en el acápite 8 solicita: "Se solicita muy respetuosamente a este Honorable Tribunal que le conceda a la parte demandante la titularidad de dicha propiedad y que en consecuencia ordene al Registro de la Propiedad a inscribir a nombre de la parte demandante la propiedad descrita en el inciso dos." (Énfasis y bastardillas en el original).

[74] En efecto, la *Demanda Enmendada* presentada el 21 de mayo de 2025, eliminó, las alegaciones que mencionaban el acto de oposición ejercitado por la Autoridad de los Puertos a través de la carta cursada a Carrillo López el 11 de marzo de 2025.

los casos favorecerá a la parte demandante. Por ello, para que proceda una solicitud de desestimación, tiene que demostrarse de forma certera que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a favor de este[75].

En efecto, de la propia certificación registral del 15 de junio de 2025, provista por Carrillo López, surge que el predio que este ocupa forma parte de la Finca 720, la cual además de estar inscrita a favor de la Autoridad de los Puertos, esta identificada como *Airport Operation Area* y con condiciones restrictivas a favor de los Estados Unidos de América. Lo anterior le impide, bajo cualquier estado de derecho, que Carrillo López pueda adquirir la referida propiedad por medio de usucapión, pues la Finca 720 es propiedad de la Autoridad y está destinada a un fin público y forma parte de los terrenos del Aeropuerto Benjamín Rivera Noriega.

En resumen, concluimos que las alegaciones carecen de especificidad y hechos demostrativos suficientes que puedan dar base a una reclamación que justifique la concesión de un remedio. Cónsono con lo resuelto por el Tribunal Supremo, "no todo lo alegado en la demanda se debe tomar como cierto y considerar favorablemente. Esta doctrina aplica solamente a los hechos bien alegados y **expresados de manera clara y concluyente, que no den margen a dudas.[76]** El recurrido no cumplió con lo anterior.

En vista de lo anterior, concluimos que el foro primario erró al declarar No Ha Lugar la solicitud de desestimación promovida por la Autoridad. Por lo anterior, procede la expedición del auto de *certiorari*, revocar la determinación recurrida y desestimar la demanda incoada.

---

[75] *Rivera, Lozada v. Universal*, supra, pág. 1023.
[76] *Roldán Rosario v. Lutron*, S.M., Inc., 151 DPR 883,890 (2000).

**IV. Parte dispositiva**

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se revoca la resolución recurrida. En consecuencia, se desestima la demanda incoada por Carrillo López.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones